UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK) PLC,

     Plaintiff,

                       CASE NO.

vs.

HENILDO LEON and
CARLOS LEON,

     Defendants.

_____/



## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys, and for its Complaint seeking this Court's Declaratory Judgment would respectfully state as follows:

### JURISDICTION AND VENUE

1.    This is an action for declaratory relief pursuant to Title 28 of the United States Code, sec. 2201 et seq, in that a present controversy exists between the parties hereto in which the Plaintiff asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute.

2.    Venue lies within the Southern District of Florida as this cause arises out of a policy of marine insurance delivered by Plaintiff to the Assured named therein, the Defendants HENILDO LEON

1



and CARLOS LEON, residing at 55 East Rivo Alto Drive, Miami Beach, Florida 33139.

3.   This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 of the United States Code, sec. 1333.

4.   Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, (hereinafter "GREAT LAKES") is a corporation organized and existing under the laws of the United Kingdom, with its office and principal place of business located in the United Kingdom, in the City of London.

5.   Upon information and belief, the Defendants HENILDO LEON and CARLOS LEON(hereinafter "LEON") are private citizens and residents of the State of Florida.

**FACTUAL ALLEGATIONS**

6.   On or about July 23, 2004, Defendants "LEON" submitted to the Plaintiff, via Defendants' agent, an application for a policy of marine insurance. Such a submission was a routine aspect of the Plaintiff's procedure for considering whether to agree to provide insurance coverage.

7.   A true and correct copy of the said application form completed and signed by Defendants, and submitted to Plaintiff on

2

or about July 23, 2004 by and on behalf of the Defendants by their agent is attached hereto as Exhibit "A."

8. On or about July 23, 2004, Defendants "LEON" also submitted to the Plaintiff, via Defendants' agent a document certifying that all recommendations set forth in a survey of the vessel to be insured, which survey was dated May 10, 2002, had in fact been complied with. Such a submission was a routine aspect of the Plaintiff's procedure for considering whether to agree to provide insurance coverage.

9. A true and correct copy of the said compliance document completed by Defendant and dated July 14, 2004 and submitted to Plaintiff by and on behalf of the Defendants "LEON" on July 23, 2004 is attached hereto as Exhibit "B."

10. Plaintiff agreed to issue its Policy No. 200/658/56978 based upon the representations set forth in, and the material information disclosed in, the application form which is attached hereto as Exhibit "A."

11. Plaintiff agreed to issue its Policy No. 200/658/56978 based upon the representations set forth in, and the material information disclosed in, the compliance document which is attached hereto as Exhibit "B."

12. On or about August 3, 2004, Plaintiff "GREAT LAKES" in exchange for good and valuable consideration issued to the Defendants "LEON" its Marine Insurance Policy No. 200/658/56978

3

affording Hull & Machinery coverage in the amount of $200,000.00 for the 1995 43 ft Baja twin engine motor yacht named "SPICY" which was owned by the said Defendants.

13.   A true and correct copy of the Declarations Page and the policy language for Plaintiff's Policy No. 200/658/56978 is attached hereto as Exhibit "C."

14.   On or about April 26, 2005, while Plaintiff's Policy No. 200/658/56978 was in full force and effect, the 1995 43 ft Baja twin engine motor yacht insured under the terms of the said policy was sustained certain damage to one of its engines.

15.   Upon receipt of the first notice of the April 26, 2005 incident described herein, Plaintiff caused an investigation to be made into the facts and circumstances surrounding the said incident. The said investigation established that the vessel owned by the Defendants was in unseaworthy condition as of the August 3, 2004 date of the inception of Policy no. 200/658/56978.

16.   The investigation established that The Defendants failed to exercise due diligence to maintain their vessel in seaworthy condition after the August 3, 2004 date of the inception of Policy no. 200/658/56978.

17.   The investigation established that the Defendants failed to have fire extinguishing equipment properly installed and maintained in good working order.

18.   The investigation established that recommendations set forth in the survey dated May 10, 2002, had not in fact been complied with.

19.   Notwithstanding the facts established by Plaintiff's said investigation, Defendants have made a claim against the Plaintiff under the terms of Policy No. 200/658/56978 demanding payment of the full price for effecting extensive repairs the vessel "SPICY" insured under the terms of the said policy.

## FIRST CAUSE OF ACTION

20.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 19 as if set forth fully herein.

21.   Plaintiff's policy states, in pertinent part:

2.     INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

3.   Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section "A" of the insuring agreement declarations page, we provide coverage for **accidental physical loss** of, or damage to a scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provis-

5

ions, conditions, warranties. Deductibles
and exclusions.

22.   The incident in which the Defendants' vessel sustained
damage on April 26, 2005, followed by its required repairs, does
not constitute an accidental physical loss for which coverage would
be afforded under the express terms and provisions of Plaintiff's
policy of marine insurance.

23.   Notwithstanding   the   lack   of   any   coverage   under
Plaintiff's policy of marine insurance, Defendants have made demand
upon Plaintiff for payment of an amount equal to the full amount
necessary to effect repairs to, or to replace, the vessel insured
under the said terms of the said policy of marine insurance.

24.   As a result of the aforesaid lack of coverage under the
terms of the terms of the policy attached hereto, Plaintiff has
sustained   actual   prejudice   and   seeks   this   Court's   Declaratory
Judgment regarding the coverage afforded under the terms of Policy
No. 200/658/56978.   Until such time as the Plaintiff is able to
have its rights and responsibilities under the marine insurance
policies construed by this Court, Plaintiff will suffer uncertainty
with respect to its responsibilities and obligations under the
terms of the said policies.

25.   As a result of the Defendants' demands for payment under
the terms of the policy of marine insurance attached hereto, and as

6

a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policies of marine insurance, and a <u>bona</u> <u>fide</u>, actual and present dispute exists calling for this Court's Declaratory Judgment.

### SECOND CAUSE OF ACTION

26.  Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 19 as if set forth fully herein.

27.   Plaintiff's policy states, in pertinent part:

### 9.  General Conditions & Warranties

\* \* \* \* \* \*

b)   It is warranted that the scheduled
     vessel is seaworthy at the inception
     of the insuring agreement. Violation
     of this warranty will void this insur-
     ing agreement from its inception.

28.   The various conditions and the various failures to remedy conditions noted in the survey dated May 10, 2002, as discovered in the course of the Plaintiff's investigation, pre-existed the August 3, 2004 date of the inception of the coverage afforded under Policy No. 200/658/56978, and the said condition rendered the vessel unseaworthy.

29.   The Defendants "LEON" were therefore in direct violation of the said express warranty set forth in Plaintiff's policy of marine insurance and therefore was in breach of the duties imposed upon the Defendants by the express terms of the Plaintiff's policy.

30.   Defendants' breach of the express warranty set forth in the Plaintiff's policy of marine insurance renders the said policy void *ab initio* and/or entitles the Plaintiff to declare the said policy void.

31.   Defendants' breach of the warranty set forth in the Plaintiff's policy of marine insurance permits the Plaintiff to avoid liability for the costs of repairing or replacing the vessel as a result of the incident of April 26, 2005.

32.   Notwithstanding the said breach of an express warranty and the lack of any coverage under Plaintiff's policy of marine insurance, Defendants "LEON" have made demand upon Plaintiff for payment of an amount equal to the full amount necessary to effect repairs to, or in the alternative, to replace, the vessel insured under the terms of the said policy of marine insurance.

33.   As a result of the Defendants' breach of an express warranty and the aforesaid lack of coverage under the terms of the terms of the policy attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy No. 200/658/56978.

8

Until such time as the Plaintiff is able to have its rights and responsibilities under the marine insurance policies construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policies.

34. As a result of the Defendants "LEON's" demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policies of marine insurance, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

## THIRD CAUSE OF ACTION

35. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 19 as if set forth fully herein.

36. Plaintiff's policy states, in pertinent part:

### 9. General Conditions & Warranties

****** 

c) This insurance agreement does not cover any loss or damage caused by your fail-ure to exercise due diligence properly to manage the scheduled vessel or main-tain it in a seaworthy condition.

9

37.  In permitting the various conditions and the various deficiencies noted in the survey dated May 10, 2002, to continue existing after the August 3, 2004 date upon which Plaintiff's policy of marine insurance incepted and thereafter, as discovered in the course of the Plaintiff's investigation, the Defendants "LEON" failed to exercise due diligence to maintain the vessel in seaworthy condition as required under the express terms of Policy no. 200/658/56978.

38.  The Defendants "LEON" were therefore in direct violation of the said express warranty set forth in Plaintiff's policy of marine insurance and therefore were in breach of the duties imposed upon the Defendants by the express terms of the Plaintiff's policy.

39.  Defendants' breach of the express warranty set forth in the Plaintiff's policy of marine insurance renders the said policy void *ab initio* and/or entitles the Plaintiff to declare the said policy void.

40.  Defendants' breach of the warranty set forth in the Plaintiff's policy of marine insurance permits the Plaintiff to avoid liability for the costs of repairing or replacing the vessel as a result of the incident of April 26, 2005.

41.  Notwithstanding the said breach of an express warranty and the lack of any coverage under Plaintiff's policy of marine insurance, Defendants "LEON" have made demand upon Plaintiff for

10

payment of an amount equal to the full amount necessary to effect repairs to, or in the alternative, to replace, the vessel insured under the terms of the said policy of marine insurance.

42.  As a result of the Defendants' breach of an express warranty and the aforesaid lack of coverage under the terms of the terms of the policy attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy No. 200/658/64720. Until such time as the Plaintiff is able to have its rights and responsibilities under the marine insurance policies construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policies.

43.  As a result of the Defendants "LEON's" demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policies of marine insurance, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

## FOURTH CAUSE OF ACTION

44.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 19 as if set forth fully herein.

45.   Plaintiff's policy states, in pertinent part:

### 9.   General Conditions & Warranties

******

d)   This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

******

n)   This contract is null and void in the event of non-disclosure or misrepresent- tation of a fact or circumstance mater- ial to our acceptance or continuance of this insurance.

46.   The Defendants breached the provisions of Plaintiff's policy of marine insurance set forth above by misrepresenting or by failing to disclose facts which were material to Plaintiff's decision to accept and/or to continue the risk of insuring the vessel.

47.   The Defendants misrepresented and/or failed to disclose material facts set forth in the document certifying that all recommendations set forth in a survey of the vessel to be insured,

12

which survey was dated May 10, 2002, had in fact been complied with.

48.  Had the Defendants disclosed the material facts referenced herein, that certain of the said recommendations had in fact not been complied with, then Plaintiff would not have agreed to insure the vessel and/or would not have issued its Policy No. 200/658/56978 or would have charged a higher premium.

49.  The Defendants' misrepresentations and/or failure to disclose material facts constitutes a breach of the duties imposed upon the Defendants by the express terms of the policy and under the applicable principles of federal admiralty law.

50.  Defendants' breach of the policy renders the said policy void *ab initio* and/or entitles the Plaintiff to declare the said policy void.

51.  Defendants' breach of the warranty set forth in the Plaintiff's policy of marine insurance permits the Plaintiff to avoid liability for the costs of repairing or replacing the vessel as a result of the incident of April 26, 2005.

52.  Notwithstanding the said breach of an express warranty and the lack of any coverage under Plaintiff's policy of marine insurance, Defendants "LEON" has made demand upon Plaintiff for payment of an amount equal to the full amount necessary to effect repairs to, or in the alternative, to replace, the vessel insured under the terms of the said policy of marine insurance.

13

53.  As a result of the Defendants' breach of an express warranty and the aforesaid lack of coverage under the terms of the terms of the policy attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy No. 200/658/56978. Until such time as the Plaintiff is able to have its rights and responsibilities under the marine insurance policies construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policies.

54.  As a result of the Defendants "LEON's" demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policies of marine insurance, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

## FIFTH CAUSE OF ACTION

55.  Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 19 as if set forth fully herein.

56.   Plaintiff's policy states, in pertinent part:

9.   General Conditions & Warranties

\* \* \* \* \* \*

l)   If the scheduled vessel is fitted with
     fire extinguishing equipment, then it is
     warranted that such equipment is properly
     installed and is maintained in good work-
     ing order. This includes the weighing of
     tanks once a year and recharging as nec-
     essary.

57.   In failing to comply with the express requirement of the
foregoing provision, as discovered in the course of the Plaintiff's
investigation, the Defendants "LEON" breached the said express
warranty as set forth under the express terms of Policy no.
200/658/56978.

58.   The Defendants "LEON" were therefore in direct violation
of the said express warranty set forth in Plaintiff's policy of
marine insurance and therefore were in breach of the duties imposed
upon the Defendants by the express terms of the Plaintiff's policy.

59.   Defendants' breach of the express warranty set forth in
the Plaintiff's policy of marine insurance renders the said policy
void *ab initio* and/or entitles the Plaintiff to declare the said
policy void.

60.   Defendants' breach of the warranty set forth in the
Plaintiff's policy of marine insurance permits the Plaintiff to
avoid liability for the costs of repairing or replacing the vessel
as a result of the incident of April 26, 2005.

15

61.  Notwithstanding the said breach of an express warranty and the lack of any coverage under Plaintiff's policy of marine insurance, Defendants "LEON" have made demand upon Plaintiff for payment of an amount equal to the full amount necessary to effect repairs to, or in the alternative, to replace, the vessel insured under the terms of the said policy of marine insurance.

62.  As a result of the Defendants' breach of an express warranty and the aforesaid lack of coverage under the terms of the terms of the policy attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy No. 200/658/64720. Until such time as the Plaintiff is able to have its rights and responsibilities under the marine insurance policies construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policies.

63.  As a result of the Defendants "LEON's" demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policies of marine insurance, and a

bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

## SIXTH CAUSE OF ACTION

64.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 19 as if set forth fully herein.

65.   Plaintiff's policy states, in pertinent part:

### 9.   General Conditions & Warranties

******

s)   Unless we agree in writing to the contrary, if we request a survey of the scheduled vessel then such survey must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the scheduled vessel, then it is an express warranty of this agreement that all such recommendations are completed prior to any loss giving rise any claim hereunder, by skilled workmen using fit and proper materials...

Failure to comply with this warranty will void this agreement from inception.

66.   In failing to comply with the express requirement of the foregoing provision, as discovered in the course of the Plaintiff's investigation, the Defendants "LEON" breached the said express warranty as set forth under the express terms of Policy no. 200/658/56978.

67.  The Defendants "LEON" were therefore in direct violation of the said express warranty set forth in Plaintiff's policy of marine insurance and therefore were in breach of the duties imposed upon the Defendants by the express terms of the Plaintiff's policy.

68.  Defendants' breach of the express warranty set forth in the Plaintiff's policy of marine insurance renders the said policy void *ab initio* and/or entitles the Plaintiff to declare the said policy void.

69.  Defendants' breach of the warranty set forth in the Plaintiff's policy of marine insurance permits the Plaintiff to avoid liability for the costs of repairing or replacing the vessel as a result of the incident of April 26, 2005.

70.  Notwithstanding the said breach of an express warranty and the lack of any coverage under Plaintiff's policy of marine insurance, Defendants "LEON" have made demand upon Plaintiff for payment of an amount equal to the full amount necessary to effect repairs to, or in the alternative, to replace, the vessel insured under the terms of the said policy of marine insurance.

71.  As a result of the Defendants' breach of an express warranty and the aforesaid lack of coverage under the terms of the terms of the policy attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy No. 200/658/64720.

Until such time as the Plaintiff is able to have its rights and responsibilities under the marine insurance policies construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policies.

72. As a result of the Defendants "LEON's" demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policies of marine insurance, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

WHEREFORE, Plaintiff demands judgment from the Court:

(A)  Declaring that the relationship of insurer and insured does not exist between Plaintiff and Defendants "LEON" as regards the incident of April 26, 2005 in which the insured vessel sustained damage;

(B)  Declaring that Plaintiff's Policy No. 200/658/56978 does not afford coverage to the Defendants "LEON" for the incident of April 26, 2005 in which the insured vessel sustained damage

19

(C)  Declaring that neither the incident of nor the damage resulting from the incident of April 26, 2005 constitute an accidental physical loss.

(D)  Declaring that the breach of the warranty of seaworthiness at the inception of the policy by the Defendants as described herein voids the Plaintiff's Policy No. 200/658/56978 *ab initio* and relieves the Plaintiff from any and all liability to the said Defendants under the terms of the Hull & Machinery coverage afforded under the said policy of marine insurance.

(E)  Declaring that the breach of the continuing warranty of seaworthiness via failure to exercise due diligence as described herein voids the Plaintiff's Policy No. 200/658/56978 and relieves the Plaintiff from any and all liability to the said Defendants under the terms of the Hull & Machinery coverage afforded under the said policy of marine insurance.

(F)  Declaring that the misrepresentation of an/or failure to disclose material facts by and/or on behalf of the Defendants as described herein voids the coverage afforded under Plaintiff's Policy No. 200/658/64720, and allow the Plaintiff to rescind the said policy.

(G)  Declaring that the breach of the express warranty regarding fire extinguishing equipment as described herein voids the Plaintiff's Policy No. 200/658/56978 and relieves the Plaintiff

20

from any and all liability to the said Defendants under the terms of the Hull & Machinery coverage afforded under the said policy of marine insurance.

(H)  Declaring  that  the  breach  of  the  express  warranty regarding  compliance  with  survey  recommendations  as  described herein voids the Plaintiff's Policy No. 200/658/56978 and relieves the Plaintiff from any and all liability to the said Defendants under the terms of the Hull & Machinery coverage afforded under the said policy of marine insurance.

(I). Any and all such other and further relief as the Court may deem proper and appropriate in the premises.

Dated:     May 11, 2006
           Fort Lauderdale, Florida


                         GOLDMAN & HELLMAN
                         Attorneys for Plaintiff
                         315 S.E. 7th Street
                         Suite 200
                         Fort Lauderdale, Florida 333
                         (954)356-0460


                    By: _____
                         STEVEN E. GOLDMAN, ESQ.
                         FLA. BAR NO. 345210

21

JUL-23-2004 FRI 03:35 PM NEDERLANDEN BGS      FAX NO. 954 784 4220      P. 02
JUL-14-2004 WED 08:45 AM NEDERLANDEN BGS      FAX NO. 954 784 4220      P. 02

## YACHT APPLICATION

| INSURED'S NAME | INSURED'S AGE | DATE | PRODUCER'S CODE |
|---|---|---|---|
| Renildo Leon and Carlos Leon | 66 | | |

| MAILING ADDRESS | | PRODUCER'S NAME | BATEMAN GORDON & SANDS, INC. |
|---|---|---|---|
| 55 East Rivo Alto Drive Miami Beach FL 33139 | | PRODUCER'S ADDRESS | NEDERLANDEN MARINE 2419 East Atlantic Boulevard Pompano Beach, FL 33062 (954) 891-0202 |

| PHONE | HOME mob 305.725.5879 | BUSINESS | PHONE |
|---|---|---|---|

| OCCUPATION | | LIENHOLDER INFORMATION |
|---|---|---|

| VESSEL NAME | SPICY | NAME |
|---|---|---|

| EFFECTIVE DATE | FROM 7/23/04 TO 7/23/05 | NUMBER & STREET |
|---|---|---|

| LAID UP FROM n/a TO: | ON SHORE AFLOAT | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

COVERAGES WILL NOT BE PROVIDED UNLESS REQUESTED HEREIN

| COVERAGES | SUM INSURED | EQUIPMENT | | | | PRIMARY POWER | | SAIL |
|---|---|---|---|---|---|---|---|---|
| HULL - PHYSICAL DAMAGE | 200,000 | BILGE PUMPS | ✓ | AUX/GENERATOR DIESEL | ✓ | | | OUTBOARD |
| TENDER/DINGHY | | COOKING STOVE | ✓ | | | | | INBOARD |
| LIABILITY COVERAGE | 1,000,000 | FLAME DETECTOR | | ENGINE ALARM | | | | INBOARD/ OUTDRIVE |
| CREW LIABILITY | | CO2/HALON SYSTEM | | LIFE RAFT | | | | OTHER |
| OWNER/OPERATOR N&C | | FIRE EXTINGUISHERS | ✓ | SONAR | | TYPE OF HULL | | SAILBOAT ✓ Cruiser |
| MEDICAL PAYMENTS | 10,000 | ANTI-THEFT DEVICES | | GPS | ✓ | | | PERFORMANCE |
| COMMERCIAL PASSENGER LIABILITY | | DEPTH SOUNDER | ✓ | OTHER (LIST BELOW) | | | | RUNABOUT |
| UNINSURED BOATERS | 10,000 | RADAR | | | | HULL MATERIAL | | WOOD |
| TRAILER | | LORAN/DIRECTION FINDER | | | | | | METAL |
| PERSONAL PROPERTY | | SHIP TO SHORE RADIO | ✓ | | | | | FIBERGLAS |
| NON-EMERGENCY TOWING | | SATNAV/OMEGA | | | | FUEL TANK | | METAL |
| OTHER | | AIR/GENERATOR GAS | | | | | | FIBERGLAS |

VESSEL INFORMATION

| YEAR | LENGTH | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE | MAX SPEED | REGISTRATION NUMBER |
|---|---|---|---|---|---|---|
| 1995 | 43 | 2002 | 200,000.00 | 260,000 | 20-25 | |

| HULL IDENTIFICATION NUMBER | BOED43533M495 | MANUFACTURER/MODEL | Baia |
|---|---|---|---|

| FENDERS OR DINGHIES | | STORED AT (CITY, DO, ST) | |
|---|---|---|---|

| ANTI-THEFT PRECAUTIONS: | | Miami Beach FL |
|---|---|---|

| WATERS TO BE NAVIGATED | Florida + Bahamas. Coverage up to 25 miles from land. |
|---|---|

WILL VESSEL BE LOCATED BETWEEN 12° 40' - 20° NORTH AND 55° - 85° WEST DURING THE PERIOD JULY 1ST - NOV 1ST     YES/NO

ENGINE/OUTBOARD MOTOR INFORMATION

| ENG | H.P. | GASOLINE | DIESEL | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|---|---|
| 1 | 1650 | | 2 | 1995 | Included with the boat. | | |
| 2 | | | 2 | | | | |

| MANUFACTURER VESSEL | | | SERIAL NUMBER |
|---|---|---|---|
| MTU | | | 4072023035200 4074033035201 |

| DATE VESSEL LAST SURVEYED | | ASHORE/AFLOAT |
|---|---|---|

$Ex. "A"$

JUL-23-2004 FRI 03:36 PM NEDERLANDEN BGS          FAX NO. 954 784 4220          P. 03
JUL-14-2004 WED 08:46 AM NEDERLANDEN BGS          FAX NO. 954 784 4220          P. 03

| TRAILER INFORMATION | YEAR | | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|
| MANUFACTURE/MODEL: | | | SERIAL NUMBER: | | |
| DETAILS OF PREVIOUS VESSELS OWNED: Carlos + Henildo ] 40' Boats, 33' Open Fish 53' Avanti | | | | | |

**OPERATORS ALWAYS LIST INSURED AS OPERATOR #1**

| | NAME | DATE OF BIRTH | AUTO DRIVERS LICENSE # | STATE | SOCIAL SECURITY | USCG/POWER SQUADRON CERTIFICATE |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | Carlos | ✓ 10-7-62 | | | | |
| 3 | Henildo | ✓ 12-23-33 | | | | |

| | VIOLATIONS/SUSPENSIONS (INCLUDING AUTO) IN LAST 5 YEARS | | | | YEARS OF BOAT OWNERSHIP | |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | Carlos | | | | ✓ 25 years | |
| 3 | Henildo | | | | ✓ 25 years | |

**GENERAL INFORMATION**

| | EXPLAIN ALL YES RESPONSES IN REMARKS | YES | NO | | EXPLAIN ALL YES RESPONSES IN REMARKS | YES | NO |
|---|---|---|---|---|---|---|---|
| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? | | ✗ | 6 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? | | ✗ |
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? | | ✗ | 7 | DOES THE APPLICANT EMPLOY PAID CREW? IF SO HOW MANY? | | ✗ |
| 3 | IS THE BOAT USED FOR RACING? | | ✗ | 8 | WAS THE OPERATOR INVOLVED IN A MARINE LOSS IN THE LAST 10 YEARS (INSURED OR NOT)? | | ✗ |
| 4 | IS THE BOAT USED FOR WATER SKIING OR DIVING? | ✓ | ✗ | 9 | WAS ANY COVERAGE DECLINED, CANCELLED OR NON-RENEWED IN THE LAST 5 YEARS? | | ✗ |
| 5 | IF THE BOAT IS USED FOR FARE PAYING PASSENGERS, WHAT IS THE AVERAGE NUMBER OF PASSENGERS PER TRIP NUMBER OF TRIP PER YEAR | | | | | | |

**REMARKS**

#4  Diving  Yes - Personal use  only

**PLEASE READ BEFORE SIGNING APPLICATION**

1.   This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained therein.

2.   Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

3.   A photograph of the vessel is required to be submitted with this application.

**NOTICE:**

The normal procedure used by the company to evaluate applications may include an investigation consumer and credit report involving information on such things as charter, general reputation, personal characteristics and mode of living. Information on the nature and scope of such a report, if one is made, will be given to you upon request.

| APPLICANT SIGNATURE | SIGNATURE DATE |
|---|---|
| *Henildo Veas* | ✓ |



**TLDallas**
*Insurance since 1919*

Insurance Brokers
Marine Underwriting Agents
Credit Insurance Specialists

T L Dallas (Special Risks) Ltd
Unit 5 & 6  Dalesway House
Hawksworth Square
Ilkley LS29 9LA
Telephone +44 (0)1943 811000
Fax +44 (0)1943 601854/601875

# COVER NOTE

### Policy No: 200/658/ 56978

In accordance with your instructions we have effected the following cover on your behalf subject to the terms and conditions in the policy wording and endorsements attached.

| Assured : | Producer : |
|---|---|
| Henildo & Carlos Leon<br>55 East Rivo Alto Drive<br>Miami Beach<br>FL 33139 | Bateman, Gordon & Sands Inc<br>P O Box 1270<br>Pompano Beach<br>FL 33061 |

| | | | |
|---|---|---|---|
| **Vessel Name:** | Spicy | **Model:** | Motor Yacht |
| **Year:** | 1995 | **Maker:** | Baia |
| **ID Number:** | BOE043533M495 | **Length:** | 43 ' |
| **Engines:** | Diesel | **Type:** | MTU Twin 650hp |

**Period of Cover:** With effect from    July 23, 2004 00.01 LST    to    July 23, 2005 00.01 LST

Cover and Respective Insured Limits:

| Section: | Sum Insured: | Deductible: |
|---|---|---|
| A) Hull | 200,000 | 4,000 |
| Tender | Not Covered | |
| Towing | Not Covered | |
| B) P + I | 1,000,000 | 500 |
| Crew Liability | Not Covered | |
| Commercial Passenger Liability | Not Covered | |
| Owner Operator | Not Covered | |
| C) Medical Payments | 10,000 | 100 |
| D) Uninsured Boaters | 10,000 | 500 |
| E) Trailer | Not Covered | |
| F) Personal Property | Not Covered | |

**Total Premium :**   US$ 3330.00 C.R.O. + US$25 Certificate Fee.

In the event of cancellation by the Assured minimum of 25% of premium deemed earned.
All fees earned at inception.

Ex. "C"

Member of the British Insurance
and Investment Brokers' Association
Registered Number 952756

**Continuation Cover Note for Policy No: 200/658/ 56978**

| | |
|---|---|
| **Laid Up Period :** | None |
| **Navigational Limits :** | Coastal Florida & Bahamas - Not to exceed 75 mile offshore. |
| **Conditions :** | as per TLD/3/PPO |
| **Warranties:** | Warranted Private and Pleasure use only. |
| | Named Windstorm Deductible Clause. |
| **Endorsements :** | Limited Pollution Coverage Endorsement |
| **Special Warranties or Conditions :** | None |

**Security as approved and agreed by you:**

> 100% Great Lakes
> Reinsurance (UK) plc per
> Belmarine SA contract no:
> 200/658

**Loss Payee :**  Assured

Date :  Tuesday, August 03, 2004   ...............................................................

For and on behalf of Participating Underwriters

# PRIVATE AND PLEASURE YACHT INSURING AGREEMENT WORDING

## 1. DEFINITIONS

a)   "You and your" refer to the insured named on the declaration page.

b)   "We, us and our" refer to the insurers named on the declaration page or accompanying schedule of insurers.

c)   "Covered person," means you, or any person detailed on your application form which has been submitted and approved by us. This does not include either a paid captain and/or crew, or a person or organisation, or their employee or agent, operating a marina, boatyard, yacht club, charter operation, sales agency, refuelling dock or similar organisations.

d)   "Scheduled vessel" means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, furniture, dinghy, outboard motor and all other equipment normally required for the operation and maintenance of the vessel and which would normally be sold with the vessel.

e)   "Trailer" refers to the insured vessel's trailer, used exclusively for that purpose.

f)   Words of masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g)   "Navigational limits" means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h)   "Salvage charges" means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life and with our permission to prevent or minimise any further loss or damage covered by Section "A" of your insuring agreement.

i)   "Deductible" A deductible is the first amount of any claim, which must be paid by you. If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount shall be deducted from the amount payable on each admissible claim.

j)   "Bodily injury/property damage" means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the vessel.

k)   "Seaworthy" means fit for the Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For a vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l)   "Sinking" means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged under water.

m)   'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

n)   'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding 'scheduled vessel' as defined in (d) above.

TLD/3/PPO                                                          Page 1 of 12

o) 'Race or speed trial' means any event involving speed and or of a competitive nature, including, but not limited to, Regattas and or Rallies. "Preparing for a race or speed trial," means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

p) "Named Windstorm" damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the "named windstorm" or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the "named windstorm" or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for section "A" of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or damage to scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us whether successful or not. These will be paid in addition to the sum insured under section "A" and "F" without application of the insuring agreement deductible, but a coinsurance provision applies whereby we pay 80% and you pay 20% of such expenses. Our maximum liability for these expenses is 80% of the sum insured under section "A" of this insuring agreement.

We will pay salvage charges incurred by you occasioned by a peril covered by this insuring agreement, up to the limit of the sum insured under section "A" of this insuring agreement.

If the Insured vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured. If your liability has been contested, and consent has been given by us in writing, we will also pay the costs thereby incurred and paid. If both vessels are to blame then, unless the liability of the owners of one or both vessels becomes limited by law, claims under this section shall be settled on the principles of cross liabilities, as if the owners of each vessel had been compelled to pay the owners of the other vessel(s) such as one half or other proportion of the latter's damages as may have been properly allowed in ascertaining the amount payable by or to you in consequence of such a collision. This principle shall apply in cases where both vessels are owned in part or in whole by you and all questions of responsibility and amount of liability between two vessels shall be left to a single Arbitrator, or if we are unable to agree upon a single Arbitrator then one shall be appointed by you and one shall be appointed by us. The two Arbitrators chosen may then choose a third Arbitrator and the decision of such single, or any two of such three Arbitrators appointed as above shall be final and binding.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the Insured vessel or for loss of life or personal injury.

Whilst the scheduled vessel is afloat theft coverage shall exclude theft or mysterious disappearance of its equipment or personal property unless occurring in conjunction with theft of the entire scheduled vessel or unless there is visible evidence of forcible entry and/or removal; made by tools, explosives, electricity or chemicals.

Whilst the scheduled vessel is on land, coverage is restricted to theft of the entire scheduled vessel including its equipment from a locked garage or locked storage building, or from such other storage place and subject to such other storage conditions, as we have prior approved in writing.

While the scheduled vessel is stored on a trailer coverage is restricted to theft of the entire scheduled vessel including its equipment from a locked garage or locked storage building or a locked fenced enclosure. If secured to a vehicle it must be secured with a trailer ball lock. It is understood and agreed that this insuring agreement does not cover loss or damage caused by the theft of your vessel and/or equipment while stored on a trailer unless occasioned by person or persons making forced entry into the locked fenced enclosure, garage or building and by destruction of the ball lock. Theft must be accompanied by actual force and violence of which there shall be visible marks made by tools, explosives, electricity or chemicals.

In any event a deductible of 10 % of the agreed hull value of the scheduled vessel and/or equipment is to apply to each theft loss, including total loss of the scheduled vessel. However a deductible of 5 % of the agreed hull value of the scheduled vessel shall apply to each theft loss including total loss where the scheduled vessel is stored and or moored in a recognised commercial storage yard or marina.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the scheduled vessel and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement, theft losses as referred to above and from a named windstorm as described below.

Loss or damage to the scheduled vessel arising from a Named windstorm shall be subject to a deductible which shall apply to all claims, including Actual and/or Constructive and/or Compromised Total Loss of the insured vessel, equal to double the Hull and Machinery deductible as shown on the declaration page.

## Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses are not covered by this insuring agreement:

a)    Damage sustained by scheduled vessel whilst being transported over land, more than 100 miles from the normal place of storage.

b)    Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould animal and marine life.

c)    Marring, scratching or denting.

d)    Osmosis, blistering or electrolysis.

e)    Manufacturing defects or design defects, including latent defects.

f)    Unrepaired damage claims if the scheduled vessel is subsequently an actual or constructive total loss, due to an insured peril, during the insuring agreement period.

g)    Losses caused directly or indirectly by ice or freezing.

TLD/3/PPO

h) Theft of the dinghy or tender and/or its outboard motor unless stolen together with the insured scheduled vessel from a storage place approved by us for theft coverage, or unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

i) Loss and or damage to the dingy and or tender whilst being towed behind the scheduled vessel.

j) Damage to the scheduled vessel caused by theft, and/or attempted theft unless coverage would have been provided under the theft provisions and restrictions detailed in Section A.

k) Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

l) Losses caused by delay and or loss of use and or enjoyment of the scheduled vessel and or its equipment.

## 4. Coverage B. Third Party Liability

If a sum insured is shown under section "B" of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of scheduled vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice. Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

### Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a) Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b) Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c) Liability assumed by you under any contract or agreement.

d) Liability which arises while the scheduled vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e) Fines or penalties imposed by any Government agency.

f) Punitive damages.

g) Liability due to pollution by any substance whether it be gradual, or sudden and accidental.

h) Intentional acts.

i) Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute.

Case 1:06-cv-21207-KMM    Document 1    Entered on FLSD Docket 05/15/2006    Page 31 of 39

j)    Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)    Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the scheduled vessel, until they are safely back on board. This exclusion however shall not extend to non competitive water skiing for which limited coverage is provided below

l)    Liability to snorklers and divers operating from the scheduled vessel, from the time they commence to leave your vessel, until they are safely back on board.

m)    Liability to fare paying passengers or passengers carried under charter.

n)    Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)    Loss or damage to any other vessel caused by the vessel insured in so far as the same would have been covered under section "A" of this insuring agreement.

p)    Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the suns rays either cumulatively or suddenly.

q)    Any claim arising from directly or indirectly caused by or associated with Human T-Cell Lymphotropic Virus type III (HILV II) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

## Coverage B, Water Skiing Coverage Limitation of Liability

Whilst the Insured vessel is being used for water skiing, the third party liability limits are reduced to :

| | |
|---|---|
| Property damage | US $10,000 |
| Bodily Injury | US $10,000 |
| Maximum any one incident | US $20,000 |

These limits shall apply from the time any person or persons begin to leave the scheduled vessel, or such activity commences, and will continue until the person or persons are safely back on board or such activity ceases completely. Nothing herein contained shall be held to vary waive or extend any of the exclusions conditions or other terms of this insuring agreement.

## Coverage B, Extension to include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover maintenance and cure and/or Jones Act Liability for hired crew. We reserve the exclusive right to set the terms, conditions and sum insured in respect of such coverage, or to decline your request.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement schedule and shall form part of the maximum recoverable under Section "B", Third Party Liability.

## 5. Coverage C, Medical Payments

If a sum insured is shown under section "C" of the insuring agreement declaration page, we will pay reasonable medical and funeral expenses necessary due to accidental bodily injury of third parties, incurred whilst boarding, leaving or onboard the scheduled vessel insured under this insuring

TLD/3/PPO                                                                     Page 5 of 12

agreement. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under section "B" of this insuring agreement, arising from the same occurrence.

This coverage will be excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved. Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

## Exclusions to Coverage C

We do not provide medical payment coverage for:

a)    Covered persons, their spouses, family or other persons who reside with them. Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b)    Responsibility assumed under any contract or agreement.

c)    Anyone injured whilst the scheduled vessel is being transported, hauled out or launched.

d)    Trespassers on the scheduled vessel.

e)    Anyone to or for whom benefits are payable under any Workers Compensation or under "Federal Longshoreman's and Harbour Workers Compensation Act".

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under section "D" of the insuring agreement declaration sheet, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

## Exclusions to Coverage D

We do not provide coverage for:

a)    Claims settled without our prior written consent.

b)    Loss due to an uninsured vessel which is a Government vessel.

c)    Loss due to a vessel operated by a covered person.

d)    Loss where no physical damage to the scheduled vessel exists, evidencing collision.

## 7. Coverage E, Trailer

If a sum insured is shown under section "E" of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer if it is used exclusively for the transportation of the scheduled vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value. Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us, whether successful or not. These will be paid in addition to the sum insured under section "E" without application of the insuring agreement deductible, but a coinsurance provision applies whereby we pay 80% and you pay 20% of such expenses.

Theft of the trailer is covered if the trailer is stolen from a marina, locked garage or locked storage building, or from such other storage place and subject to such storage conditions as we have prior approved in writing.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual or constructive total loss of the scheduled vessel plus trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement.

### Exclusions to Coverage E

a)   Damages sustained by scheduled vessel whilst being transported over land, more than 100 miles from the normal place of storage.

b)   Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould animal or marine life.

c)   Marring, scratching or denting.

d)   Manufacturing defects or design defects, including latent defects.

e)   Tyre damage.

e)   Losses due to exceeding manufacturers maximum load or speed specifications.

f)   Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

## 8. Coverage F, Personal Property

If a sum insured is shown under section "F" of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloading from the scheduled vessel. Theft losses shall only be recoverable in accordance with the conditions detailed under Section "A". Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is $1,000.

Fishing gear and tackle, unless permanently affixed to the scheduled vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible.

We will not cover loss or damage to:

a) Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b) Fishing gear or tackle which is permanently affixed to the scheduled vessel, unless the scheduled vessel insured hereunder shall become an actual or constructive total loss, due to a peril insured against.

We will not cover losses due to:

a) Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b) Breakage of articles of a brittle nature unless caused by the scheduled vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c) Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the scheduled vessel.

## 9. General Conditions & Warranties

a) It is warranted that the scheduled vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity.

b) It is warranted that the scheduled vessel is seaworthy at the inception of the insuring agreement. Violation of this warranty will void this insuring agreement from its inception.

c) This insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence properly to manage the scheduled vessel or maintain it in a seaworthy condition.

d) This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

e) This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the scheduled vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the scheduled vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

f) This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated as pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied. Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

g) If you sell or pledge the scheduled vessel or otherwise transfer ownership in part or in full, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

h) In the event of a claim under this insuring agreement for an actual or constructive total loss, the annual premium is deemed fully earned.

i) It is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

j) We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

k) It is warranted that covered persons must at all times comply with relevant Statutes, Laws, by-laws and US Coast Guard and other regulations, governing the use of the scheduled vessel.

l) If the scheduled vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year and recharging as necessary.

m) If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying you the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

n) This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

o) We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these. iv) Capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

p) If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us.

q) If any covered person has other insurance against property damage loss covered by this insuring agreement, we will only pay the proportion of the claim which our sum insured bears to the total of all the sums insured covering the loss. If this insuring agreement provides liability coverage, this insurance shall be excess over all other valid and collectible liability insurances.

r) Unless we specifically agree in writing, and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

s) Unless we agree in writing to the contrary, if we request a survey of the scheduled vessel then such survey must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the scheduled vessel, then it is an express warranty of this agreement that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either.

1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

Or,

2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim.
Failure to comply with this warranty will void this agreement from inception.

TLD/3/PPO                                                    Page 9 of 12

t)    In no event shall this insurance cover any loss, damage, expense or liability of whatever nature, which might otherwise be recoverable under this insuring agreement arising out of or in any way connected with, whether directly or indirectly, the use or operation of any computer, computer system, computer software, programme or process or any electronic system where any such loss, damage, expense or liability arises directly or indirectly, as a consequence of a) the date change to the year 2000 or any other date change and/or b) any change or modification of or to any such computer, computer system, computer software, programme or process or any electronic system in relation to any such date change.

u)    The scheduled vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible .Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows;

A)   Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum
B)   Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum
C)   Sails, standing and running rigging - 12.5% per annum
D)   Internal and/or external protective covers, canvas, vinyl and other materials - 20% per annum
E)   Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum
F)   Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum
G)   Outboard Motors - 20% per annum
H)   Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers - 20% per annum
I)   Batteries and solar charging panels - 20% per annum
J)   Electrical equipment including but not limited to internal and external appliances, winches, pump motors and electric deck gear  - 10% per annum.
K)   Mast and spars -- 5% per annum.
L)   Stanchions and lifelines – 10% per annum.
M)   Inflatable, tenders or dinghies -- 12.5 % per annum.
N)   Hard FRP, composites, aluminium or wood tenders or dinghies – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciation value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

We have the right to settle any physical loss or damage claim under this insuring agreement, either by making payment to you of the estimated loss agreed between you and us, or by making repairs or replacements, like with like, for your lost or damaged property.

v)    No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose; provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be

sustainable unless commenced within the shortest limitations permitted under the laws of such state.

w) Where a lay up "laid up period" has been specified within the declaration page, it is warranted that the scheduled vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified.  "Use" includes, but is not restricted to, living on board the scheduled vessel.

## 10. Your Duties In The Event Of A Loss

1) Immediately take all possible steps to minimise the loss and protect the scheduled vessel from further loss.  Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2) As soon as possible give us notification of the loss and its circumstances.

3) Comply with any reasonable request made of you, by us with regard to the loss.

4) Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5) Give us an opportunity to examine the damaged property before it is repaired or discarded.

6) Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7) Neither assume obligation, nor admit liability without our written permission to do so.

8) Immediately forward to us any legal papers or notices received in connection with the loss.

9) Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request

10) Allow examination by physicians of our choice.

11) Assist us in obtaining copies of medical records and reports.

12) Give us a notarised statement or statutory declaration if we so request.

13) Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14) Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service Of Suit Clause

It is agreed that in the event of the failure of the Underwriters severally subscribed to this insurance (The Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriter's right to remove an action to the United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters rights set forth above:

a)    It is further agreed that the Assured may serve process upon any senior partner in the firm of:

Goldman & Hellman<br>
730 Fifth Avenue, 9th Floor<br>
New York<br>
NY 10019

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)    The above named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriters behalf in the event such a suit shall be instituted.

c)    The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgage under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgage.

d)    Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

Clause 11 above is subject, in all respects to clause 12 hereafter.

## 12. CHOICE OF LAW

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

06-21207

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

CIV-MOORE

## I.(a) PLAINTIFFS

GREAT LAKES REINSURANCE
(UK) PLC

## DEFENDANTS

HENILDO LEON
CARLOS LEON

MAGISTRATE JUDGE
GARBER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  *UK*
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  *Miami-Dade*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Goldman + Hellman
315 SE 7th St, Suite 200
Ft Lauderdale, FL 33301  954-356-0460

ATTORNEYS (IF KNOWN)

1:06CV 21207 KMM/BLG

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE)  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**A CONTRACT**
☐ 110 Insurance
☒ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**A TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury — Med Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**A REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**A CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
HABEAS CORPUS:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**A LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc Security Act

**A BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**B SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS — Third Party 26 USC 7609

**A OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions A OR B

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. sec. 2201 Declaratory Judgment action

LENGTH OF TRIAL
via _3_ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE  5/12/06

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 53709|   AMOUNT 350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____